# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**RAYMOND JAQUEZ,**

    **Plaintiff,**

**v.**                                                                                                              No. 16-cv-1399 SMV

**NANCY A. BERRYHILL,**[1]
**Acting Commissioner of Social Security Administration,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 16] ("Motion"), filed on July 11, 2017. The Commissioner responded on September 18, 2017. [Doc. 20]. Plaintiff replied on October 2, 2017. [Doc. 21]. The parties have consented to the undersigned's entering final judgment in this case. [Doc. 8]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that the Administrative Law Judge ("ALJ") impermissibly failed to explain why he rejected portions of Dr. Walker's and Dr. Castro's opinions. Accordingly, the Motion will be granted and the case remanded for further proceedings. *See* 42 U.S.C. § 405(g) (sentence four).

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Courts must meticulously review the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not re-weigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

---

[2] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981; 416.1481. This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

**Applicable Law and Sequential Evaluation Process**

In order to qualify for disability benefits, a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) he is not engaged in "substantial gainful activity"; *and* (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) his impairment(s) either meet or equal one of the "Listings"[3] of presumptively disabling impairments; *or* (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If he cannot show that his impairment meets or equals a Listing, but he proves that he is unable to perform his "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

## Procedural Background

Plaintiff applied for a period of disability and disability insurance benefits on July 6, 2012, and for supplemental security income on September 26, 2012. Tr. 10. He alleged a disability-onset date of January 1, 2007. *Id.* His claims were denied initially and on reconsideration. *Id.* Plaintiff requested a hearing before an ALJ. *Id.* ALJ Barry O'Melinn held a hearing on April 20, 2015, in Albuquerque, New Mexico. Tr. 10, 46−74. Plaintiff appeared in person and was represented by an attorney. Tr. 10, 46, 49. The ALJ heard testimony from Plaintiff and an impartial vocational expert, Leslie J. White. Tr. 10, 68–73.

The ALJ issued his unfavorable decision on June 23, 2015. Tr. 23. Initially, the ALJ found that Plaintiff met the insured status requirements through December 31, 2009. Tr. 12. At step one he found that Plaintiff had not engaged in substantial gainful activity since the onset date of his alleged disability. *Id.* Because Plaintiff had not engaged in substantial gainful activity for at least 12 months, the ALJ proceeded to step two. *Id.* There he found that Plaintiff suffered from the following severe impairments: "affective disorder; anxiety; schizophrenia; obesity; right shoulder disorder; back disorder; and hepatitis c." *Id.* At step three the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 13–15.

Because none of Plaintiff's impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 15–20. The ALJ found that:

> [Plaintiff] has the [RFC] to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b), occasionally lifting and/or carrying up to 20 pounds, frequently lifting and/or carrying up to 10 pounds, standing and/or walking with normal breaks for a

> total of at least six hours in an eight hour workday, sitting for at least six hours in an eight hour work day. [Plaintiff] is limited to never climbing ladders, ropes, or scaffolds, but could frequently climb ramps or stairs. [Plaintiff] has no limitation in the ability to balance, but could only occasionally stoop, frequently kneel, occasionally crouch, and frequently crawl. Additionally, [Plaintiff] is limited to frequent bilateral overhead reaching. [Plaintiff]'s push and pull operation of hand and foot controls is unlimited, except as limited in lifting or carrying. Moreover, [Plaintiff] is limited to understanding, remembering, and carrying out simple instructions and making commensurate work-related decisions. [Plaintiff] can respond appropriately to supervision, co-workers, and work situations, deal with routine changes in work setting, maintain concentration, persistence and pace for up to and including two hours at a time, with normal breaks throughout a normal workday. Furthermore, [Plaintiff] is suitable for positions requiting no interaction with the public. [Plaintiff] can be around co-workers throughout the day, however, he must have only occasional interaction with co-workers.

Tr. 15. At step four the ALJ found that Plaintiff could not return to his past relevant work. Tr. 20. Proceeding to step five, the ALJ considered Plaintiff's RFC, age, education, and work experience. He found that Plaintiff could perform work that exists in significant numbers in the national economy and, therefore, was not disabled. Tr. 21–22. Plaintiff requested review from the Appeals Council, but that request was denied on October 24, 2016. Tr. 1. Plaintiff timely filed the instant action on December 23, 2016. [Doc. 1].

## **Analysis**

Remand is warranted because the ALJ erred in failing to explain why he rejected Dr. Walker's and Dr. Castro's assessments of certain moderate limitations. The Court declines to pass on Plaintiff's other alleged errors at this time.

Although ALJs need not discuss every piece of evidence, they are required to discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). That is, when assessing a plaintiff's RFC, an ALJ must explain what weight he assigns to each opinion and why. *Id.* "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity . . . because the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted)); *see Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) (same). Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (internal brackets omitted) (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). ALJs are required to provide "appropriate *explanations* for accepting or rejecting such opinions." SSR 96-5p, 1996 WL 374183, at *5 (emphasis added); *see Keyes-Zachary,* 695 F.3d at 1161 (same) (citing 20 C.F.R. § 404.1527(e)(2)(ii)). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5, at *20, 1996 WL 374184, at *7. The ALJ's reasons must be specific and legitimate. *Chapo*, 682 F.3d at 1291.

Dr. Walker offered a non-examining opinion that Plaintiff had a marked limitation in the ability to interact with the public and moderate limitations in more than a dozen other areas. Tr. 88–89, 104–05. Dr. Castro agreed with Dr. Walker and found the same limitations. Tr. 122–

23, 140–41. The ALJ gave "great weight" to these opinions. Tr. 19. Plaintiff argues that the ALJ ignored the majority of these limitations; he neither incorporated them into the RFC, nor explained their omission. [Doc. 16] at 15–17. Therefore, as Plaintiff sees it, the ALJ failed to apply the correct legal standard in weighing Dr. Walker's and Dr. Castro's opinions. *Id.* The Court agrees.

There is no authority permitting
an ALJ to ignore any portion of a doctor's opinion.

Defendant's arguments in support of the ALJ's decision are unpersuasive. [Doc. 20] at 10–16. Defendant points to the agency's Program Operations Manual Systems ("POMS"), discussing the Mental Residual Functional Capacity Assessment ("MRFCA") form on which Dr. Walker's and Dr. Castro's opinions are recorded. The POMS explains that Section I of the MRFCA form is "'*merely a worksheet*' designed to record summary conclusions regarding the general degree of limitations as well as the adequacy of documentation but it '*does not constitute the RFC assessment*.'" [Doc. 20] at 12 (quoting POMS DI § 24510.060 (emphasis in POMS, Defendant's alteration omitted)). Section III of the form is where the medical consultant records the actual mental RFC assessment. *Id*. Thus, Defendant apparently argues that the ALJ was permitted to ignore the doctors' Section I findings as long as he addressed the Section III findings. *Id.* This is incorrect. Defendant misrepresents the POMS. There is, in fact, no authority permitting an ALJ to rely on the Section III findings to the exclusion of the Section I findings. The Court rejects the argument.

Preliminarily, neither Dr. Walker's nor Dr. Castro's opinion contains a "Section I" or "Section III." Tr. 88–89 and 104–05 (Dr. Walker's opinion), 122–23 and 140–41 (Dr. Castro's

opinion). Although the reports are entitled "Mental Residual Functional Capacity Assessment," Tr. 88, 103, 121, 139, the reports are not recorded in the format that has been traditionally used. In the past, a doctor's MRFCA was recorded on a stand-alone form. That form contained sections that were labeled I, II, and III. It is these sections to which Defendant's argument refers.

In this case, however, neither Dr. Walker's, nor Dr. Castro's MRFCA was recorded on the traditional stand-alone form with Sections I, II, and III. Rather, MRFCAs were recorded using the new Electronic Claims Tool ("eCAT"). Tr. 88–90 and 103–06 (Dr. Walker's opinion), 121–24 and 139–42 (Dr. Castro's opinion). The MRFCAs, as recorded in eCAT, contain neither a "Section I," nor a "Section III." *Id.* There simply is nothing on the doctor's reports reflecting any "Section." *Id.* Having reviewed hundreds of these forms in the past, the Court can make an educated guess as to which portions of the MRFCAs might constitute the Section I and Section III findings in the traditional form. However, the Court cannot agree with Defendant that in this case, the ALJ was permitted to ignore the "Section I" findings when there is no "Section I" in either Dr. Walker's or Dr. Castro's report.

More to the point, there simply is no authority permitting an ALJ to ignore any portion of a doctor's opinion, regardless of whether it is labeled as "Section I" or not. *Silva v. Colvin*, 203 F. Supp. 3d 1153 (D.N.M. 2016) (thoroughly explaining the multiple sources of authority requiring ALJs to evaluate source opinions in their entirety and rejecting the argument that an ALJ may ignore any portion of an opinion). "The POMS' distinction between Section I and Section III is aimed at the doctor who completes the MRFCA form; *it is not material to how the ALJ weighs the nonexamining opinion.*" *Silva*, 203 F. Supp. 3d at 1159 (emphasis added). To

the contrary, the POMS explicitly and repeatedly requires the ALJ to consider nonexamining opinions in their entirety. *Silva*, 203 F. Supp. 3d at 1160–61 (surveying and discussing the authorities and citing *e.g.*, POMS § DI 24515.007(1)(b) ("All evidence from nonexamining sources is opinion evidence.")).

Like the POMS, the regulations also belie Defendant's position. *Id.* at 1161–62 (citing 20 C.F.R. §§ 404.1527(e)(2)(i), 404.1512(b)(1)(viii)). The regulations require the ALJ to consider the doctor's opinion in its entirety. There is no exception for the Section I findings.

In line with the POMS and the regulations, the case law also requires the ALJ to consider a doctor's opinion in its entirety. For example, in *Haga v. Astrue*, the Tenth Circuit held that an ALJ erred in failing to explain why he adopted some of a consultative examiner's ("CE") restrictions but rejected others. 482 F.3d 1205, 1208 (10th Cir. 2007). "[T]he ALJ did not state that any evidence conflicted with [the CE's] opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of [the CE's] restrictions but not others." *Id.* The court, therefore, remanded "so that the ALJ [could] explain the evidentiary support for his RFC determination." *Id.* Later, the Tenth Circuit expressly applied *Haga* and its reasoning to the opinions of nonexamining physicians in *Frantz v. Astrue*, 509 F.3d 1299, 1302–03 (10th Cir. 2007).

Defendant does not address *Haga* or *Frantz*. *See* [Doc. 24]. Instead, she cites to one case that, if read in a vacuum, could be misinterpreted as licensing an ALJ to ignore findings that are recorded in Section I. [Doc. 20] at 13 (citing *Smith*, 821 F.3d at 1269 n.2 "[The ALJ] did not repeat the moderate limitations assessed by the doctor. But both administrative law judges

incorporated these limitations by stating how the claimant was limited in the ability to perform work-related activities."). Considering the POMS, the regulations, and *Haga* and *Frantz*, the Court cannot interpret the relevant case law as supporting Defendant's argument that the ALJ in this case was permitted to give great weight to Dr. Walker's and Dr. Castro's opinions, without explaining why he did not account for their Section I findings in his RFC assessment.

<u>The ALJ's RFC assessment fails to adequately
account for Dr. Walker's and Dr. Castro's Section I findings.</u>

If the limitations assessed by the doctors in Section I had been accounted for in Section III of their reports, then Defendant's argument might be more persuasive. *See Nelson v. Colvin*, No. 15-6226, 655 Fed. App'x 626 (referring to the doctor's Section I findings versus his Section III findings but ultimately deciding that the ALJ's RFC accounted for all of the Section I findings (as opposed to finding that the ALJ was free to disregard the Section I findings entirely)).[4] An ALJ may rely exclusively on the Section III findings only with an essential caveat: the Section III findings must adequately account for the Section I findings.

---

[4] *See also Lee v. Colvin*, 631 Fed. App'x 538, 541 (10th Cir. 2015) (finding that the POMS' distinction between the purposes of Section I and Section III "does not mean, of course, that the ALJ should turn a blind eye to any moderate limitations enumerated in Section I that are not adequately explained in Section III.") (emphases omitted); *Fulton v. Colvin*, 631 F. App'x 498, 502 (10th Cir. 2015) ("Where a psychologist's Section III narrative does not contradict any Section I limitations and describes the effect each Section I limitation would have on the claimant's mental RFC, the ALJ may properly look to only the Section III narrative as the psychologist's opinion regarding mental RFC. The ALJ did so here . . . . And we do not see any contradiction between Sections I and III of Dr. Kendall's [report] or any failure to describe in Section III the effects of any Section I limitations on [the plaintiff]'s capacity for work.") (internal citations omitted); *Carver v. Colvin*, 600 F. App'x 616, 618–19 (10th Cir. 2015) (acknowledging the POMS' distinction between Section I and Section III, but holding that an ALJ may not "turn a blind eye to moderate Section I limitations," and ultimately finding that the Section I limitations at issue were accounted for in the Section III findings); *Jaramillo v. Colvin*, 576 F. App'x 870, 874 (10th Cir. 2014) (acknowledging the POMS' distinction between Section I and Section III, analyzing whether the ALJ's RFC (presented to the VE in a hypothetical question) "adequately account[ed]" for the Section I findings, and ultimately finding that the Section I limitations at issue were accounted for in the ALJ's RFC).

In that vein, Defendant argues that, here, the ALJ's RFC assessment adequately accounted for all of the moderate (and marked) limitations recorded in the doctors' reports. [Doc. 20] at 14–15.

First, Defendant argues that the doctors' assessment of moderate limitation in the ability to "sustain an ordinary routine without special supervision" is adequately accounted for in the ALJ's "limiting Plaintiff to simple instructions and [simple] work-related decisions and finding that he could respond appropriately to supervision, coworkers, and work situations and maintain concentration, persistence, and pace for up to and including two hours at a time, with normal breaks, throughout a workday." [Doc. 20] at 14 (citing Tr. 15–20). Second, Defendant argues that the doctors' assessment of moderate limitation in the ability to "accept instructions and respond appropriately to criticism from supervisors" is accounted for in the ALJ's limitation to only occasional interaction with coworkers. [Doc 20] at 14–15. Third, Defendant argues that the doctors' assessment of moderate limitation in the ability to "respond appropriately to changes in the work setting" is accounted for in the ALJ's finding that Plaintiff could deal with routine changes in a work setting. [Doc. 20] at 15.

These are all non sequiturs. Defendant offers no legal support for these arguments. Besides, the POMS contradict her position. The ALJ limited Plaintiff to light, unskilled work.[5] Tr. 15. However, three of the mental abilities "critical" for performing unskilled work are the ability to (1) "sustain an ordinary routine without special supervision," (2) "accept instructions and respond appropriately to criticism from supervisors," and (3) "respond appropriately to

---

[5] The ALJ's RFC in this case tracks the mental demands of "unskilled" work. *Compare* Tr. 15 (RFC assessment), *with* POMS § DI 25020.010(A)(3), (B)(2) (describing the "mental demands of unskilled work" and the "mental abilities needed for any job).

11

changes in the work setting." POMS DI § 25020.010(B)(3)(f), (k), and (m). Drs. Walker and Castro agreed that Plaintiff was moderately limited in these areas. It was reversible error for the ALJ to purportedly adopt the doctors' opinions while assessing an RFC that conflicted with them. The ALJ failed to apply the correct legal standard in evaluating the opinions of Dr. Walker and Dr. Castro.

The jobs identified by the VE conflict with<br>certain of Dr. Walker's and Dr. Castro's Section I findings.

Finally, Defendant argues that even if the ALJ's RFC assessment failed to account for all of the doctors' Section I findings, the error would not change the outcome of the case because Plaintiff could still perform the jobs identified by the VE. [Doc. 20] at 15–16. Defendant argues that those jobs do not require "social interaction" or "significant interaction with others (i.e., no significant taking of instructions or helping others)." *Id.* at 15 (citing to the Dictionary of Occupational Titles). The Court is not persuaded. Defendant acknowledges that the jobs identified by the VE are unskilled. *Id.* As explained above, the doctors opined that Plaintiff had several moderate limitations in areas "critical" for the performance of unskilled work. The ALJ's decision, therefore, cannot stand without some explanation for why he rejected these medical opinions. Remand is warranted.

## Conclusion

The ALJ erred in failing to explain why he rejected Dr. Walker's and Dr. Castro's assessments of certain moderate limitations. Remand is warranted on that ground, and the Court declines to address Plaintiff's other alleged errors at this time.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 16] is **GRANTED**. The Commissioner's final decision is reversed, and this case is remanded for further proceedings in accordance with this opinion.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**